898 F.2d 1144
 Lafonda Fay FOSTER, Plaintiff-Appellant,
v.
Betty KASSULKE, Warden, and Elizabeth W. Chandler, Deputy
Warden, Kentucky State Correctional Institute for Women;
Steve Berry, Classification Manager, and John Wigginton,
Secretary, Corrections Cabinet, Defendants (89-5838/39),
and
Robert F. Stephens, Roy N. Vance, William M. Gant, Charles
M. Leibson, Donald C. Wintersheimer, Dan Jack Combs, and
Joseph Lambert, Justices of the Supreme Court of Kentucky,
Defendants (89-5838), Defendants-Appellees (89-5839),
and
Paul F. Isaacs, Public Advocate, and David E. Norat,
Director, Department of Public Advocacy,
Commonwealth of Kentucky,
Defendants-Appellees
(89-5838),
Defendants
(89-5839).
 Nos. 89-5838, 89-5839.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 16, 1990.
Decided March 22, 1990.
Rehearing and Rehearing En Banc Denied May 4, 1990.
 
 Gail Robinson (argued), Kevin McNally, McNally & Robinson, Frankfort, Ky., for plaintiff-appellant.
 Barbara W. Jones, Office of General Counsel, Corrections Cabinet, Cecily Lambert (argued), Chief Legal Counsel, Administrative Office of Courts, Edwin A. Logan (argued), Frankfort, Ky., for defendants.
 Before KENNEDY and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether a federal district court may intervene in a criminal prosecution in a Kentucky state court where the state court procedures are allegedly violating appellant's rights to a meaningful appeal of her death penalty convictions. Appellant was convicted in a Kentucky trial court on five murder counts for which she received five separate death sentences. She is presently prosecuting her direct appeal in the Kentucky Supreme Court. We hold that abstention from federal intervention in the Kentucky proceedings is required and therefore AFFIRM the District Court's judgment.
 
 
 2
 Appellant, who is indigent, was represented at trial by counsel from the Kentucky Department of Public Advocacy (DPA). On appeal she is represented by an attorney at DPA, and private co-counsel, Kevin McNally, a former DPA attorney who has been in private practice since August 1, 1988. The DPA has limited attorney McNally's compensation to $2,500 plus certain expenses.
 
 
 3
 Appellant filed this action against the DPA, the prison warden, and Justices of the Kentucky Supreme Court under 42 U.S.C. Sec. 1983, alleging that DPA's decision to limit her attorney's compensation to $2,500 violated her rights to equal protection, due process, and the effective assistance of counsel. She claims that these rights are also being violated because the state, pursuant to the Kentucky Supreme Court's newly-instituted policy of videotaping trials, refused to provide appellant with a written transcript of the six-week trial. As a result, she claims she is significantly disadvantaged and burdened in prosecuting her appeal in that her counsel find it nearly impossible to write briefs within the deadlines set by the Kentucky courts.[1] Appellant argues that the undue delay and extreme difficulty of using a video record render her counsel's assistance ineffective. She seeks both injunctive and declaratory relief. She asked the District Court to order DPA to pay McNally a reasonable fee and the Kentucky Supreme Court to provide her with a written transcript of the video testimony.
 
 
 4
 The District Court dismissed both claims. It dismissed appellant's claim for fees for her attorney under Fed.R.Civ.P. 12(b)(6) on the grounds she lacked standing. The court abstained on the written transcript request, applying the rule that "[i]f a criminal prosecution is pending in state court [when the federal complaint is filed], Younger [v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ] requires federal noninterference, unless extraordinary circumstances are otherwise found to exist." Zalman v. Armstrong, 802 F.2d 199, 204 (6th Cir.1986).[2]
 
 
 5
 Although the District Court dismissed appellant's section 1983 claim with respect to her attorney's compensation on standing grounds[3] and abstained with respect to the videotape claim, we hold that abstention was required on both claims and affirm the District Court on that basis. Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985) ("[a] decision below must be affirmed if correct for any reason, including a reason not considered by the lower court").
 
 
 6
 The Supreme Court explained in Younger that federal courts should abstain from interfering with state court criminal proceedings absent "extraordinary circumstances." Younger reported that "our cases ... repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." Younger, 401 U.S. at 45, 91 S.Ct. at 751. That admonishment applies to state appellate proceedings as well as state trials. Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Younger identified the reasons for abstention as concern for equity, comity, and federalism in state and federal relations, concerns which are thwarted when the federal courts interfere in state judicial activity. See Younger, 401 U.S. at 43-44, 91 S.Ct. at 750. In applying Younger 's command, this Court has said that:
 
 
 7
 [I]n determining the applicability of the [Younger ] abstention rule a federal court should consider at least three separate factors: (1) whether a state proceeding is pending at the time the federal action is initiated; (2) whether an adequate opportunity is provided to raise the constitutional claims in the state proceeding; and (3) whether there are extraordinary circumstances which nevertheless warrant federal intervention.
 
 
 8
 Zalman, 802 F.2d at 202.
 
 
 9
 Applying the Younger rule as interpreted by Zalman to the facts of this appeal demonstrates that abstention was appropriate on both claims. First, it is undisputed that the state proceeding was pending at the time appellant filed her federal section 1983 action. Second, appellant had and continues to have the opportunity to raise the constitutional questions in the state courts. Even though her demands for adequate attorney compensation and a written transcript have been denied by the state courts, any violation of her constitutional rights which she asserts in her federal section 1983 action may be raised on appeal as a basis for reversal. Moreover, even assuming an adverse judgment on appeal, she still has resort to state habeas relief, where the constitutionality of the state procedures could be determined by the state court. Ky.Rev.Stat.Ann. Sec. 419.020 (1989). Failing to get relief there, she may then turn to the federal courts and seek habeas review, arguing that her conviction was in violation of the constitutional rights which her section 1983 complaint asserts were denied. In seeking injunctive relief in her section 1983 action, she is attempting to obtain federal review of state court procedures in a criminal case before the state court has had the opportunity to decide them finally. Federal review should be given in the context of a federal habeas proceeding following the appropriate exhaustion of state remedies, where concerns of equity, comity, and federalism--concerns that Younger teaches require abstention--are accommodated. See Younger, 401 U.S. at 43-44, 91 S.Ct. at 750. The Supreme Court recently noted in Deakins v. Monaghan, 484 U.S. 193, 208, 108 S.Ct. 523, 533, 98 L.Ed.2d 529 (1988) (White, J., concurring), that:
 
 
 10
 [a] judgment in the federal [Sec. 1983] damages action may decide several questions at issue in the state criminal proceeding. It may determine, for example, that certain evidence was seized contrary to the Fourth Amendment, or that an interrogation was conducted in violation of the Sixth Amendment, or that Fifth Amendment rights were somehow violated.... If the claims ... were disposed of on the merits by the District Court, this decision would presumably be owed res judicata effect in the forthcoming state criminal trial.... "[T]he potential for federal-state friction is obvious." Guerro v. Mulhearn, 498 F.2d 1249, 1253 (CA1 1974) [footnote omitted].
 
 
 11
 Pursuing injunctive and damage relief in a federal section 1983 action is similarly hostile to the federal-state relations. Id. at 209, 108 S.Ct. at 533.
 
 
 12
 The third inquiry, whether there are extraordinary circumstances that warrant federal intervention, is not met. The Supreme Court in Younger defined the general parameters within which federal interference in state matters is justified.
 
 
 13
 "[W]hen absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection."
 
 
 14
 Younger, 401 U.S. at 45, 91 S.Ct. at 751 (emphasis added) (quoting Fenner v. Boykin, 271 U.S. 240, 243-44, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)). In this case, appellant makes no showing--plain or otherwise--that challenging the state procedures in state court would not afford her adequate protection. Nor is any injury "irreparable" within the meaning of Younger, since to be irreparable "the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." Id. 401 U.S. at 46, 91 S.Ct. at 751. As discussed above, the threat to plaintiff's federal rights can be eliminated in the state courts.
 
 
 15
 In addition to her ability to obtain a state remedy, it is also not clear that inadequate compensation for one of her two attorneys and the use of a videotape transcript represent a " 'danger of irreparable loss [that] is both great and immediate.' " Id. at 45, 91 S.Ct. at 751 (quoting Fenner, 271 U.S. at 243, 46 S.Ct. at 493). The relationship between her attorney's compensation and his effectiveness as counsel is by no means certain. Were it so, pro bono defense counsel would be by definition "ineffective." This conclusion, of course, flies in the face of reality when it is observed that many pro bono cases are handled with a great deal of competence. Also, appellant does not persuasively argue that use of the video transcript is an insurmountable burden to adequate representation. Indeed, her attorney maintained only that "working from a video record at this point is even more cumbersome than the earlier stage when I was simply viewing the videotape record and taking notes. The real difficulty is trying to access the video record." Joint App. at 61. While this process was no doubt very laborious and time-consuming, appellant must show an "injury other than that incidental to every criminal proceeding brought lawfully and in good faith...." Younger, 401 U.S. at 47, 91 S.Ct. at 752 (quoting Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943)). The burden imposed on appellant in this case is no different than that suffered by any similarly-situated defendant in the Kentucky state courts.[4] Although difficult, effective prosecution of her appeal is not made impossible by the Kentucky procedures at issue here. There are unquestionably circumstances where federal rights are violated in state proceedings such that federal intervention is warranted. While we empathize with counsel's burden in prosecuting their client's appeal using such a long and cumbersome videotape record,[5] we do not find the circumstances extraordinary enough to justify federal intervention in the state criminal procedure, especially when the issues can be raised and answered in the Kentucky state courts. This is not one of the "[o]ther unusual situations calling for federal intervention" recognized by the Court in Younger. Id. 401 U.S. at 54, 91 S.Ct. at 755. Section 1983 should not be used to make an end run around habeas corpus procedures.[6] Any constitutional violations should be vindicated in the state court in the first instance and, failing vindication there, by the federal court upon habeas review, rather than a federal section 1983 action brought while the state proceeding is still pending. See, e.g., Wilcox v. Miller, 691 F.2d 739 (5th Cir.1982), where the Fifth Circuit held that Younger abstention was appropriate when a state defendant whose appeal was pending brought a federal section 1983 action alleging that the state violated his right to counsel.
 
 
 16
 Because abstention was proper on both claims asserted by appellant in her federal section 1983 action, the judgment of the District Court dismissing the action is AFFIRMED.
 
 
 
 [1]
 The six-week trial produced a videotape record that is over 132 hours long. Appellant alleges that because of its length and the difficulty in using it to retrieve trial passages, it is not possible to construct competent briefs within the deadlines set by the court
 
 
 [2]
 The court did, however, require the state to provide appellant with equipment with which to view the videotape. That ruling has not been appealed
 
 
 [3]
 On this question, the District Court ruled that appellant did not have standing to assert that her attorney should be given more compensation. The court reasoned that increased compensation was a right that is personal to him and which could not be brought by appellant in her Sec. 1983 claim. While we do not decide the question, we are not convinced that the court was correct, since appellant's claim was not simply that her attorney was underfunded. Rather, she claimed that because he was underfunded she was receiving ineffective assistance, which is a violation of her rights. See Luckey v. Harris, 860 F.2d 1012 (11th Cir.1988) (permitting a class of indigent defendants and future defendants in criminal proceedings to sue in federal court under Sec. 1983 to compel the state court to provide adequate defense counsel, including sufficient funding. The action was also brought by a class of all attorneys who represent or will represent indigent defendants)
 
 
 [4]
 Appellant asserts that she was denied equal protection because the state's denial of a written transcript and the cap on her attorney's fee was arbitrary. Because we find abstention appropriate, we do not address these contentions on the merits, but rather leave it to the Kentucky courts to address those issues on appeal
 
 
 [5]
 This Court has previously noted the problems associated with Kentucky's policy of videotaping trials. Dorsey v. Parke, 872 F.2d 163 (6th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989)
 
 
 [6]
 It is the same concerns that require exhaustion of state remedies in a habeas action that compel abstention in appellant's section 1983 suit. Exhaustion of state remedies is a prerequisite to bringing a habeas action "to avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors." Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). These same concerns underlie the Younger abstention: "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity. That principle was defined in Younger ... as 'a proper respect for state functions....' " Id. at 491, 93 S.Ct. at 1837. Habeas relief is denied if there is no state exhaustion out of concerns of comity. The same interests require abstention from deciding plaintiff's section 1983 claim until the state courts have been afforded an opportunity to address the questions raised by appellant