we think an unconstitutional line has been drawn between rich and poor." *Douglas*, 372 U.S. at 357. They buttress the force of this observation by pointing out that, as of 1987, 47 states permitted first appeals as of right and that cases like *Anders v. California*, 386 U.S. 738, 744 (1967), referred to the right to have counsel advocate on one's behalf in the "first appeal."

As the Supreme Court noted, "The question is not one of absolutes, but one of degrees." *Ross*, 417 U.S. at 612. While the appeal at issue in this case is undoubtedly a defendant's first appeal, it has also been rendered discretionary by his decision to plead guilty. The state has a fundamental interest in the finality of guilty pleas, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), and by entering a plea a defendant has voluntarily acknowledged that he does not dispute the factual basis of the state's case against him. Given that there has not been an underlying trial, the number of issues for appeal has been greatly reduced. Furthermore, the statute provides that a defendant can guarantee himself appointed appellate counsel by entering a conditional plea that preserves those issues that trial counsel has identified as viable on appeal. Mich. Comp. Laws § 770.3a(2)(d). In short, the protections built into the statute convince us that in this "matter of degrees" the balance tips in favor of constitutionality.[3]

### III.

The injunction ordered by the district court is **dissolved**, the declaratory judgment is **vacated**, and this cause is **remanded** to the district court with instructions to enter judgment in favor of defendants.

---

[3] While it does not bind us, we note that the Supreme Court declined to grant certiorari to review the Michigan Supreme Court's *Bulger* decision.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0220P (6th Cir.)
File Name: 02a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN CLIFFORD TESMER;
CHARLES CARTER; and ALOIS
SCHNELL, on behalf of all
similarly situated individuals;
ARTHUR M. FITZGERALD; and
MICHAEL D. VOGLER,
          *Plaintiffs-Appellees,*

          *v.*

JENNIFER GRANHOLM,
Attorney General,
          *Defendant,*
JUDGE JOHN F. KOWALSKI;
JUDGE WILLIAM A. CRANE;
and JUDGE LYNDA L.
HEATHSCOTT, in their official
capacities, individually and as
representatives of a class of
similarly situated circuit court
judges,
          *Defendants-Appellants
                    (00-1824),*
JUDGE DENNIS C. KOLENDA,
          *Appellant (00-1845).*

Nos. 00-1824/1845

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 00-10082—Victoria A. Roberts, District Judge.

Argued:  December 5, 2001

Decided and Filed:  July 2, 2002

Before:  NORRIS, SILER, and BATCHELDER, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:**    Thomas R. Wheeker, OFFICE OF THE
ATTORNEY GENERAL, Lansing, Michigan, Judy E.
Bregman, BREGMAN & WELCH, Grand Haven, Michigan,
for Appellants.  Mark Granzotto, Detroit, Michigan, for
Appellees. **ON BRIEF:** Thomas R. Wheeker, OFFICE OF
THE ATTORNEY GENERAL, Lansing, Michigan, Judy E.
Bregman, BREGMAN & WELCH, Grand Haven, Michigan,
for Appellants. Mark Granzotto, Detroit, Michigan, Kary L.
Moss, AMERICAN CIVIL LIBERTIES UNION, Detroit,
Michigan, for Appellees.

_____

**OPINION**

_____

   ALAN E. NORRIS, Circuit Judge.  As amended in 1994,
the Michigan Constitution provides that individuals who
plead guilty to a crime may only appeal by leave of the court.
Mich. Const. 1963, Art. 1, § 20. The question litigated below
centered on whether the federal constitution requires
appointment of counsel to assist indigent defendants who
wish to apply for leave to appeal.  The district court issued a
declaratory judgment holding that the denial of appointed
counsel under these circumstances violates the United States
Constitution.  In an effort to enforce its judgment, the court

264 Mich. at 499, 614 N.W.2d at 104.   It offered the
following rationale:

   Appeals from plea-based convictions and appeals from
   convictions obtained following trials, like those appeals
   at issue in *Douglas* and *Ross,* are fundamentally
   different.  Foremost, a defendant who tenders a plea has
   admitted guilt of the offense in open court. "[A] guilty
   plea represents a break in the chain of events which has
   preceded it in the criminal process. When a criminal
   defendant has solemnly admitted in open court that he is
   in fact guilty of the offense with which he is charged, he
   may not thereafter raise independent claims relating to
   the deprivation of constitutional rights that occurred prior
   to the entry of the guilty plea." *Tollett v. Henderson,* 411
   U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

   . . . .

   . . . In contrast with trials, less danger exists in plea cases
   that the record will be so unclear, or the errors so hidden,
   that the defendant's appeal will be reduced to a
   meaningless ritual.  Also, a concession of guilt limits
   considerably the potential issues that can be raised on
   appeal.  These are all reasoned distinctions that are
   relevant to determining whether Michigan provides
   "meaningful access" to the appellate courts.

*Bulger*, 461 Mich. at 515-517, 614 N.W.2d at 112-13
(citations and footnote omitted).

   Plaintiffs take issue with the distinction drawn by the
Michigan Supreme Court between appeals of right and
discretionary appeals.   In their view, this emphasis is
misplaced.  Instead, the key is whether the appeal is a
defendant's first appeal.  Hence, they contend this case is
closer to *Douglas* than to *Ross* because the latter involved a
discretionary appeal after the first appeal of right had been
adjudicated.   They point to the following language in
*Douglas*: "[W]here the merits of the one and only appeal an
indigent has of right are decided without benefit of counsel,

[T]here are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. The Fourteenth Amendment "does not require absolute equality or precisely equal advantages," *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973), nor does it require the State to "equalize economic conditions." *Griffin v. Illinois*, 351 U.S., at 23, 76 S.Ct., at 592 (Frankfurter, J., concurring). It does require that the state appellate system be "free of unreasoned distinctions," *Rinaldi v. Yeager*, 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966), and that indigents have an adequate opportunity to present their claims fairly within the adversary system. *Griffin v. Illinois, supra*; *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). The State cannot adopt procedures which leave an indigent defendant "entirely cut off from any appeal at all," by virtue of his indigency, *Lane v. Brown*, 372 U.S., at 481, 83 S.Ct., at 771, or extend to such indigent defendants merely a "meaningless ritual" while others in better economic circumstances have a "meaningful appeal." *Douglas v. California, supra*, 372 U.S. at 358, 83 S.Ct. at 817. *The question is not one of absolutes, but one of degrees.* In this case we do not believe that the Equal Protection Clause, when interpreted in the context of these cases, requires North Carolina to provide free counsel for indigent defendants seeking to take discretionary appeals to the North Carolina Supreme Court, or to file petitions for certiorari in this Court.

*Ross*, 417 U.S. at 610-12 (footnote omitted) (emphasis added).

A month after the district court issued its injunctive order in the case before us, the Michigan Supreme Court released an opinion holding the indigent defendants are not "entitled to the appointment of counsel at public expense when applying for leave to appeal a plea-based conviction." *Bulger*,

---

enjoined the Michigan judiciary from following the contested provision of the Michigan Constitution, as well as the statute designed to codify it.

We conclude that the district court should have abstained from hearing the claims of the three criminal-defendant plaintiffs because they could have raised their constitutional claims in their pending state court proceedings, as evidenced by the fact that a nearly identical challenge was wending its way through the courts of Michigan at the time that the litigation before us was commenced. That does not end our inquiry, however, because we agree with the district court that the two attorney plaintiffs had *jus tertii* standing to challenge the statute codifying the practice of appointing appellate counsel to indigent defendants. Nonetheless, we hold that the statute at issue sufficiently protects an indigent defendant's constitutional rights.

Accordingly, we dissolve the injunction issued by the district court, reverse and vacate its grant of declaratory relief, and remand the matter with instructions to enter judgment in favor of defendants.

## I.

The plaintiffs, three criminal defendants and two attorneys who accept appointments to represent criminal defendants in law appeals, filed suit in federal court on March 2, 2000, alleging that the practice of denying appointed appellate counsel to indigent defendants who have pleaded guilty or nolo contendere in Michigan courts violated the federal constitution. Defendants included three circuit court judges who had declined to appoint counsel to plaintiffs after accepting their guilty pleas.[1]

---

[1] The complaint also named Jennifer Granholm, the Attorney General of Michigan, as a defendant in her official capacity. She is not a party to this appeal.

Although the constitutional violations alleged in the complaint occurred prior to the enactment of the statute that codified the provision of the Michigan Constitution at issue, 1999 P.A. 200; Mich. Comp. Laws § 770.3a (2000) ("the statute"), the attorney plaintiffs sought an order declaring that it, too, ran afoul of the federal constitution. On March 31, 2000, the district court granted declaratory relief, holding that "the practices of the judicial officer Defendants and other similarly situated state circuit court judges, of denying indigents who have pleaded guilty or nolo contendere the right to appointed appellate counsel in preparing applications for leave to appeal, to be in violation of the indigents' equal protection and due process rights guaranteed under the United States Constitution." *Tesmer v. Granholm*, 114 F. Supp. 2d 603, 606 (E.D. Mich. 2000). The district court struck down the statute for the same reason. *Id.*

After this declaratory judgment was entered, plaintiffs sought injunctive relief because certain Michigan judges continued to deny appointed counsel in these situations. The district court enjoined all Michigan judges from taking any action whatsoever to enforce or implement the statute. *Tesmer v. Kowalski*, 114 F. Supp. 2d 622, 629 (E.D. Mich. 2000). The three named defendant judges have appealed from this injunction, as has Judge Dennis C. Kolenda, who was not named as an original defendant but who was nonetheless affected by the district court's action.

While this litigation was progressing in federal court, an action involving this same question was making its way through the courts of Michigan. Ultimately the Michigan Supreme Court issued an opinion that contrasted sharply to that of the district court:

> We granted leave in this case to determine whether an indigent defendant is entitled to the appointment of appellate counsel at public expense when applying for leave to appeal a plea-based conviction. We hold that neither the state nor the federal constitution requires the appointment of counsel under these circumstances.

close question, we disagree with the conclusion of the district court.

In *Ross v. Moffitt*, 417 U.S. 600 (1974), the Supreme Court was asked to extend the right to appointment of counsel for an appeal as of right, which was articulated in *Douglas,* to the preparation of petitions for leave to appeal to either the United States Supreme Court or to North Carolina's highest court. The Court declined to extend the right that far and, in so ruling, explained the constitutional underpinnings that guided its decision. After first recounting how both the Due Process and Equal Protection Clauses have been invoked in this context, the Court explained that the Equal Protection Clause provided the more compelling rationale:

> [I]t is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or a jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all. *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). The fact that an appeal has been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. *Douglas v. California, supra.* Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis.

. . . .

by the court, the defendant waives the right to have an attorney appointed at public expense to assist in filing an application for leave to appeal or to assist with other postconviction remedies, and shall determine whether the defendant understands the waiver. Upon sentencing, the court shall furnish the defendant with a form developed by the state court administrative office that is nontechnical and easily understood and that the defendant may complete and file as an application for leave to appeal.

Mich. Comp. Laws § 770.3a. By its own terms, the statute carves out significant exceptions to the denial of counsel to indigent defendants who have pleaded guilty. These exceptions are designed to protect a defendant in those situations where he has the most at stake: when the prosecutor appeals; when the sentence falls above the sentencing range; and when he has preserved an issue by entering into a conditional plea. We note that the statute *requires* appointment of counsel under these circumstances.

In addition, the statute accords the trial court discretion to appoint counsel when there has been a dispute about the manner in which the sentence has been calculated or when an issue has otherwise been preserved for appeal. Furthermore, the statute seeks to protect a defendant from waiving his right to counsel unwittingly by requiring the court to explain the implications of a guilty plea with respect to appointment of counsel. Of course, the trial court is constitutionally required to ensure that a plea is entered knowingly; nonetheless, a defendant's attention is explicitly drawn to the fact that, if he enters a guilty plea, he will not enjoy the assistance of appointed appellate counsel.

Despite these protections, the district court held that the statute violated the United States Constitution: "[W]hen a rich man is given a meaningful opportunity to appeal while a poor man is given only a meaningless ritual, that is invidious discrimination." *Tesmer*, 114 F. Supp. 2d at 618-19 (citing *Douglas v. California*, 372 U.S. 353 (1963)). While this is a

Under our federalist scheme of government, Michigan remains free to decide the conditions under which appellate counsel will be provided where our state constitution commands that the mechanism of appellate review is discretionary. Const. 1963, art. 1, § 20.

*People v. Bulger*, 462 Mich. 495, 499, 614 N.W.2d 103, 104-05, *cert. denied*, 531 U.S. 994 (Mich. 2000). The Michigan Supreme Court did not reach the constitutionality of the statute, however, because it did not apply to defendant. *Bulger*, 462 Mich. at 506, 614 N.W.2d at 107.

## II.

As they did below, defendants argue that the district court should have abstained from taking action because the ongoing criminal proceedings in the courts of Michigan provided plaintiffs who had pleaded guilty with an adequate opportunity to press their constitutional challenges. They also urge us to find that the attorney plaintiffs lacked standing to bring suit. We will address each of these arguments in turn.

### 1. Abstention

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court counseled federal courts to abstain from adjudicating a matter otherwise properly before it in deference to pending state criminal proceedings in the interest of "Our Federalism." *Id.* at 43-45; *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600-01 (1975) (discussing comity and other concerns of federalism); *see also Zalman v. Armstrong*, 802 F.2d 199, 201-02 (6th Cir. 1986). In a companion case, the Court held that the rule announced in *Younger* with respect to injunctive relief applied with equal force to requests for declaratory relief:

[I]n cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under

these principles, declaratory relief should ordinarily be denied as well.

*Samuels v. Mackell*, 401 U.S. 66, 73 (1971).

This circuit looks to three factors when determining whether *Younger* abstention is appropriate: (1) whether the underlying proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001); *Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000); *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997); *Zalman*, 802 F.2d at 202. In a nutshell, *Younger* instructs a federal court to abstain "when the state's interest is so important that exercising federal jurisdiction would disrupt the comity between federal and state courts." *Hayse*, 110 F.3d at 20. We review the district court's decision respecting abstention de novo. *Tindall*, 269 F.3d at 538.

*A.  Pending State Action*

We begin by asking whether the first requirement for *Younger* abstention has been satisfied: the existence of pending state-court proceedings involving plaintiffs. In answering this question, "the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed." *Zalman*, 802 F.2d at 204. A case remains pending until the litigant has exhausted his state appellate remedies. *Huffman*, 420 U.S. at 609; *see also Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir. 1990). Moreover, the existence of state habeas corpus relief may keep a claim pending for purposes of abstention analysis. *Foster*  898 F.2d at 1146.

As mentioned earlier, the complaint includes five plaintiffs: three criminal defendants who pleaded guilty and two attorneys who allege that they have accepted referrals in the past and contemplate doing so in the future. The parties agree

appointed for review of the defendant's conviction or sentence.

(2) The trial court shall appoint appellate counsel for an indigent defendant who pleads guilty, guilty but mentally ill, or nolo contendere if any of the following apply:

(a) The prosecuting attorney seeks leave to appeal.

(b) The defendant's sentence exceeds the upper limit of the minimum sentence range of the applicable sentencing guidelines.

(c) The court of appeals or the supreme court grants the defendant's application for leave to appeal.

(d) The defendant seeks leave to appeal a conditional plea under Michigan Court Rule 6.30(C)(2) or its successor rule.

(3) The trial court may appoint appellate counsel for an indigent defendant who pleads guilty, guilty but mentally ill, or nolo contendere if all of the following apply:

(a) The defendant seeks leave to appeal a sentence based upon an alleged improper scoring of an offense variable or a prior record variable.

(b) The defendant objected to the scoring or otherwise preserved the matter for appeal.

(c) The sentence imposed by the court constitutes an upward departure from the upper limit of the minimum sentence range that the defendant alleges should have been scored.

(4) While establishing that a plea of guilty, guilty but mentally ill, or nolo contendere was made understandingly and voluntarily under Michigan Court Rule 6.302 or its successor rule, and before accepting the plea, the court shall advise the defendant that, except as otherwise provided in this section, if the plea is accepted

Finally, in *Singleton*, the Supreme Court sketched the third jurisdictional requirement in these terms:

> Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply. If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by the default the right's best available proponent.

428 U.S. at 116. This involves something short of the absolute procedural bar required to overcome the principle of abstention. *Id.* at n.6. (stating that this does not require that "assertion by the third parties would be in 'all practical terms impossible'") (internal citation omitted). In the case before us, the criminal-defendant plaintiffs assert that they have been deprived of effective access to the courts. As the district court put it, "[i]ndigent defendants denied appellate counsel face significant, insurmountable obstacles in bringing their own challenges to the [statute]." *Tesmer*, 114 F. Supp. 2d at 611. Although these obstacles are insufficient to overcome the more stringent requirements of abstention, they are sufficient to satisfy the requirements for *jus tertii* standing.

In our view, the district court correctly concluded that the attorney plaintiffs met the criteria for *jus tertii* jurisdiction outlined by the Court in *Singleton* and *Powers*. Accordingly, they have standing to challenge the Statute. We now turn to the merits of their claim.

## 3. Constitutionality of the Statute

The provisions of the challenged statute at issue read as follows:

Sec. 3a. (1) Except as provided in subsections (2) and (3), a defendant who pleads guilty, guilty but mentally ill, or nolo contendere shall not have appellate counsel

that abstention only applies to the criminal-defendant plaintiffs Tesmer, Carter, and Schnell.

According to the complaint, plaintiff Tesmer pleaded guilty to a charge of home invasion in 1999. He then presented a written request to the sentencing court for the appointment of an appellate attorney to prepare an application for leave to appeal. This request was denied on September 7, 1999. The district court concluded that it should abstain from adjudicating Tesmer's claim because he was party to a pending action in state court, he had adequate opportunity to raise his constitutional arguments in the state court proceeding, and no extraordinary circumstances justified interference in these state court proceedings. *Tesmer v. Granholm*, 114 F. Supp. 2d at 612-14. Appellees do not challenge the district court's decision to abstain in the case of Mr. Tesmer.

With respect to plaintiff Carter, the district court noted that an action was pending in state court. However, it found abstention to be inappropriate as to him because he lacked an adequate opportunity to raise his constitutional claim, a conclusion that will be discussed in the next section of this opinion.

Finally, the district court concluded that plaintiff Schnell did not have a pending state action. *Id.* at 612. His application for leave to appeal had been denied on April 1, 1999 and his request for rehearing was denied on May 25, 1999. Under the appropriate Michigan rules, Schnell had 56 days in which to file a delayed application for leave to appeal with the Michigan Supreme Court. Thus, in the district court's view, at the time the federal complaint was filed, Schnell's state action had been completed and abstention as to him was inappropriate. *Id.*

We disagree with this analysis. As our decision in *Foster, supra,* makes clear, the decision to abandon avenues of state-court relief does not necessarily rule out abstention. In *Foster*, plaintiff challenged the constitutionality of a Kentucky statute limiting the amount of compensation to

which her appointed counsel was entitled, as well as the practice of not providing a trial transcript. *Foster*, 898 F.2d at 1145. While her claims had been denied by the courts of Kentucky at the time her § 1983 complaint was filed, this court concluded that she could pursue her claims on direct appeal and, failing there, could resort to state habeas relief:

> In seeking injunctive relief in her section 1983 action, she is attempting to obtain federal review of state court procedures in a criminal case before the state court has had the opportunity to decide them finally. Federal review should be given in the context of a federal habeas proceeding following the appropriate exhaustion of state remedies, where concerns of equity, comity, and federalism -- concerns that *Younger* teaches require abstention -- are accommodated.

*Id.* at 1146-47. In short, *Younger* requires that a party exhaust state remedies before instituting a constitutional challenge in federal court. In *Huffman*, for instance, the plaintiff failed to take an appeal from an adverse trial court decision and instead filed suit in federal court. He argued that *Younger* should not apply because the state court litigation had ended. The Court disagreed, noting that "a party . . . must exhaust his state appellate remedies before seeking relief in the District Court." *Huffman* at 608. This is so "because it is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions." *Id.* at 609. Moreover, "the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious." *Id.* at 610.

In our view, the considerations delineated in *Huffman* apply to plaintiff Schnell. His failure to pursue his claim by filing a delayed application for leave to appeal with the Michigan Supreme Court or, for that matter, instituting a habeas corpus action under Michigan law, Mich. Comp. Laws §§ 600.4301-

*Singleton*, 428 U.S. at 113. The same reasoning applies to the attorney plaintiffs. They have alleged that they have represented indigent defendants in the past for which they received payment from the state and that they will continue to do so in the future. As in *Singleton*, plaintiffs will suffer an actual injury if the statute remains in force.

The next consideration concerns the relationship between the litigants and the persons whose rights they seek to enforce:

> If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.

*Id.* at 114-15. Applying this test to the facts before it, the district court concluded that the relationship between the attorneys and the indigent defendants was sufficient:

> The Attorneys have a close relationship to indigent defendants who are denied appellate counsel; and, the Attorneys are the appellate counsel whose services are being denied. Furthermore, just as a woman cannot safely secure an abortion without a physician, indigent defendants need counsel to effectively present their appellate claims.

*Tesmer v. Granholm*, 114 F. Supp. 2d at 610. This reasoning strikes us as correct. While the indigent defendants seek counsel and the attorney plaintiffs seek payment for their services, both parties seek the same end: the nullification of the statute. Accordingly, we conclude that the interests of the attorney plaintiffs are sufficiently close to those of indigent defendants to support *jus tertii* jurisdiction.

defendants. In order to press their claims, they must have suffered an "injury in fact." As already mentioned, the complaint alleges that both attorneys earn a portion of their income by "taking assigned appeals from trial and plea based convictions" and that the Statute will "adversely affect the incomes of Mr. Fitzgerald and Mr. Vogler in that it will reduce the number of cases in which they could be appointed and paid as assigned appellate counsel."

The district court concluded, and we agree, that the doctrine of *jus tertii* applies under these circumstances. The Supreme Court has explained that the doctrine permits a litigant to bring suit on behalf of a third party provided certain conditions apply: the litigant must have suffered an injury in fact; he must have a close relation to the third party; and there must be some hindrance to the ability of the third party to assert his own interests. *See Powers v. Ohio*, 499 U.S. 400, 410-411 (1991).

The Supreme Court's analysis in *Singleton v. Wulff*, 428 U.S. 106 (1976), applies forcefully to the facts before us. In *Singleton*, two physicians challenged restrictions on funding for abortions performed for Medicaid-eligible patients. The Court began by observing that, "'[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.'" *Id.* at 114 (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)). However, this rule "should not be applied where its underlying justifications are absent." *Id.*

The Court first found that the physicians alleged a concrete injury:

> If the physicians prevail in their suit to remove this limitation, they will benefit, for they will then receive payment for the abortions. The State (and Federal Government) will be out of pocket by the amount of the payments. The relationship between the parties is classically adverse, and there clearly exists between them a case or controversy in the constitutional sense.

87, means that he has failed to exhaust his state court remedies and abstention is therefore appropriate unless "he can bring himself within one of the exceptions specified in *Younger*." *Huffman* at 608; *see also Foster* at 1146 ("even assuming an adverse judgment on appeal, [plaintiff] still has resort to state habeas relief, where the constitutionality of the state procedures could be determined by the state court.").

Accordingly, we conclude that each of the three criminal-defendant plaintiffs had an ongoing state court proceeding at the time that the federal complaint in this action was filed.

## B. Adequate Opportunity to Raise Constitutional Claims

In considering the applicability of the *Younger* abstention doctrine, the federal plaintiff "has the burden to show that the state procedural law barred presentation of [its] claims." *Armco, Inc. v. United Steelworkers of America*, 280 F.3d 669, 682 (6th Cir. 2002) (internal punctuation omitted) (citing *Federal Express Corp. v. Tennessee Public Serv. Comm'n*, 925 F.2d 962, 970 (6th Cir. 1991)). A federal court should not exert jurisdiction if the plaintiff had an opportunity to present his federal claim in state proceedings. *Moore v. Sims*, 442 U.S. 415, 425 (1979) (citing *Juidice v. Vail*, 430 U.S. 376 (1977)). Accordingly, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Id.* at 425-26. Put another way, "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

The district court found that plaintiff Tesmer had an adequate opportunity to present his federal claims because he filed a "lawyerly brief" seeking a delayed application for leave to appeal. *Tesmer v. Granholm*, 114 F. Supp. 2d at 613. The court concluded, however, that plaintiff Carter, though similarly situated, did not have such an opportunity because he filed a declaration stating that "he did not have a lawyer to represent him and he did not know the law." *Id.*

We are unable to agree with the district court's view of the scope of its inquiry with respect to whether the state provided plaintiff Carter with an adequate opportunity to raise his constitutional claims. The "adequate opportunity" prong of the abstention doctrine requires a generalized review of the procedures made available by the state to raise constitutional issues. As the cases cited above make abundantly clear, in the absence of compelling evidence to the contrary, there is a strong presumption of adequacy.

Here, the district court determined that plaintiff Tesmer had an adequate opportunity to raise his claim. If he had an adequate opportunity, then plaintiff Carter, who was similarly situated, did also. That plaintiff Carter was allegedly unable to take advantage of the opportunity because of the lack of appointed counsel has no bearing upon the *Younger* inquiry; it goes directly to the merits of the case. Furthermore, the adequacy of the state mechanism for raising the constitutional claim is evident given that a criminal defendant managed to present nearly the identical claim to the Michigan Supreme Court in *Bulger,* 462 Mich. 495, 614 N.W.2d. 103.

Of course, the fact that the district court should have abstained does not mean that plaintiff Carter can never pursue his claim in a federal forum. The *Younger* abstention doctrine merely delays federal adjudication, it does not preclude it. *See Huffman*, 420 U.S. at 606 ("[A]ssuming . . . that litigants are entitled to a federal forum for the resolution of all federal issues, that entitlement is most appropriately asserted by a state litigant when he seeks to *relitigate* a federal issue adversely determined in *completed* state court proceedings.") (emphasis original).[2]

---

[2] As the Court recognized in *Huffman*, we do not mean "to suggest that there is a right of access to a federal forum for the disposition of all federal issues." *Huffman*, 420 U.S. 606, n.18.

### C. Extraordinary Circumstances

The district court considered whether extraordinary circumstances existed that would make abstention inappropriate only with respect to plaintiff Tesmer. However, given the similarity of their situations, the same analysis applies to all three criminal-defendant plaintiffs.

Circumstances justifying federal court interference with state proceedings only exist where irreparable injury is both "great and immediate"; where the state law is "flagrantly and patently violative of express constitutional prohibitions"; or where there is a showing of "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Younger*, 401 U.S. at 46, 53-54. We agree with the district court's conclusion that plaintiffs have failed to show that such circumstances exist in this case.

### D. Conclusion

For the reasons outlined above, we conclude that the district court should have abstained from hearing the claims of the criminal-defendant plaintiffs. As *Younger* and its progeny make clear, the principles of "Our Federalism" dictate that state courts generally be given an opportunity in the first instance to adjudicate cases without federal interference. *Younger*, 401 U.S. at 43-45. The district court's decision respecting abstention is therefore reversed.

### 2. *Jus Tertii* Standing for Attorney Plaintiffs

As the district court recognized, the three criminal-defendant plaintiffs could not challenge the constitutionality of the statute that codified the allegedly unconstitutional practice of denying appointment of appellate counsel because it had not been enacted at the time that they pleaded guilty. Consequently, that constitutional challenge could only be raised, if at all, by attorney plaintiffs.

Defendants contend that the attorneys lack standing because they are asserting the rights of third parties, indigent